IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WILLIAM ANDREW JEWELL,

                Plaintiff,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, UNITED STATES
IMMIGRATION AND CUSTOMS
ENFORCEMENT, and UNITED STATES
DEPARTMENT OF JUSTICE CRIMINAL
DIVISION,

                Defendants.

OPINION AND ORDER

24-cv-490-wmc

---

Plaintiff William Andrew Jewell, who is incarcerated at the Federal Correctional Institution in Oxford, Wisconsin ("FCI-Oxford") and represents himself, was granted leave to proceed with a complaint against the United States Department of Homeland Security ("DHS"), United States Immigrations and Customs Enforcement ("ICE"), and the United States Department of Justice Criminal Division ("DOJ"), alleging that they failed to respond to his requests under the Freedom of Information Act ("FOIA") for records related to his criminal conviction. (Dkt. #8.) Defendants have filed a motion for summary judgment, arguing that plaintiff cannot prevail because each agency responded to his requests and complied with FOIA. (Dkt. #31.) For the reasons explained below, the court will grant defendants' motion for summary judgment and close this case.

UNDISPUTED FACTS[1]

**A. Background on Plaintiff William Andrew Jewell**

In 2011, plaintiff William Andrew Jewell was charged with conspiracy to distribute child pornography using an internet bulletin board known as the "Dreamboard." (Dkt. #37, at 1.) Plaintiff pleaded guilty to one count lodged against him in a superseding indictment and is currently incarcerated at FCI-Oxford, where he is serving a 240-month sentence. (*Id.* at 1-2.) Plaintiff alleges that he made FOIA requests related to the investigation that led to his conviction, but that defendants failed to respond as required. (*Id.* at 2.)

**B. Plaintiff's FOIA Request to the Department of Homeland Security and Its Response**

On March 16, 2021, DHS received a FOIA request from plaintiff at its "Privacy Office." (*Id.*) That request, which was dated March 10, 2021, sought records regarding:

1. The times and dates of all content/no-content based postings, of all private messages associated with the defendant's participation in the "Dreamboard" conspiracy (a.k.a. U.S. Department of Homeland Security's "Operation Delego").

2. The full-text of all content/non-content-based postings, of all private messages associated with the defendant's participation in the "Dreamboard" conspiracy (a.k.a. U.S. Department of Homeland

---

[1] The following facts are drawn from the parties' proposed findings of fact in compliance with the court's procedures on summary judgment, which were provided to the parties during the preliminary pretrial conference. (Preliminary Pretrial Packet (dkt. #23) Proc. to be Followed on Mot. For Summ. Judg., §§ I-II). To the extent that plaintiff has not put into dispute the facts proposed by defendant, the court treats those facts as undisputed. (*Id.* § II(C)); *Hedrich v. Bd. of Regents of Univ. of Wisconsin Sys.*, 274 F.3d 1174, 1178 (7th Cir. 2011) (courts are to consider only evidence set forth in proposed finding of fact with proper citation); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1018 (N.D. Ill. 2018) (disregarding "submissions that make legal arguments and assert legal conclusions").

      Security's "Operation Delego").

3. An unmodified/unabridged/unredacted copy of all materials (written and/or recorded) associated with defendant's November 27, 2012 debriefing with Assistant U.S. Attorney John Luke Walker, Special Agent Leslie Williams of the U.S. Department of Homeland Security, and defense counsel Craig Lynn Bass of the Bass Law Firm (Longview, TX).

(*Id.*) DHS reviewed this request (2021-HQFO-00729) and determined that it concerned records relating to an investigation and operation conducted by ICE and the Homeland Security Investigations ("HSI") program. (*Id.* at 3.) Therefore, DHS referred the request to ICE and provided plaintiff with the relevant contact information. (*Id.* at 5-6.)

### C. Plaintiff's FOIA Request to ICE and Its Response

On April 6, 2021, ICE received the referred FOIA request from DHS. (*Id.* at 7.) ICE had previously received a FOIA request (2021-ICFO-32566) from plaintiff for the same records on January 18, 2021, which it acknowledged by letter. (*Id.* at 8.) ICE closed the request as duplicative, which constituted a final determination. (*Id.* at 6.) Nearly two years later, plaintiff appealed, and ICE informed him that it had searched HSI records in a manner that was adequate and reasonably calculated to uncover all relevant documents but had located no responsive records. (*Id.* at 7.) ICE then sent a final response letter to plaintiff regarding his first FOIA request (2021-ICFO-32566), informing him that it found no responsive records after conducting a search. (*Id.*) Plaintiff appealed again, but ICE administratively closed this appeal as duplicative of the one already adjudicated. (*Id.* at 7-8.)

### D. Plaintiff's FOIA Request to DOJ and Its Response

DOJ also received a FOIA request for records from plaintiff on ▬▬, which was identical to his FOIA request to DHS (2021-HQFO-000729) and ICE (2021-ICFO-32566). (*Id.* at 12-13.) DOJ acknowledged plaintiff's request and verified his identity. (*Id.* at 13.) DOJ informed plaintiff by letter that it was conducting a search in the "sections most likely to contain responsive records" and would be extending the time limit beyond the ten-day statutory period because the request presented "unusual circumstances." (*Id.* at 14.) DOJ also informed plaintiff that another component of the department could maintain the sought-after records and routed the request to the Executive Office for United States Attorneys for processing and direct response. (*Id.*)

Nearly two and a half years later, plaintiff submitted an administrative appeal citing DOJ's lack of a final response determination. (*Id.*) Without a final determination, there was no action for DOJ to consider on appeal. (*Id.*) DOJ eventually issued a final response determination to plaintiff's request on March 12, 2025. (*Id.* at 14-15.) Specifically, DOJ determined that plaintiff sought records pertaining to his criminal case, which was prosecuted by DOJ's Child Exploitation and Obscenity Section ("CEOS"). (*Id.* at 17.) DOJ advised plaintiff that it had located 11 pages of responsive records, but that they were being withheld under FOIA Exemptions 6, 7(C), and 7(F), which are set forth at 5 U.S.C. §§ 552(b)(6), (b)(7)(C), and (b)(7)(F), because disclosure would constitute an unwarranted invasion of personal privacy or could reasonably be expected to endanger the life or physical safety of an individual. (*Id.* at 14-15, 18.)

4

OPINION

As noted above, this court granted plaintiff leave to proceed on his claims that DHS, ICE, and DOJ violated FOIA by failing to respond to his requests and improperly withholding requested records. (Dkt. # 8, at 4). Defendants move for summary judgment, accompanied by affidavits and declarations from officials in the FOIA offices of DHS, ICE, and DOJ. (Dkt. # 31, at 1).

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To survive summary judgment, however, the nonmovant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to [reach] a verdict in [his] favor." *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019) (citation and internal quotation marks omitted).

Although *pro se* litigants are entitled to liberal construction of their pleadings, they, too, have the burden to come forward in response to a motion for summary judgment with evidence that demonstrates a genuine issue of material fact. *Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011) ("[A plaintiff's] pro se status doesn't alleviate his burden on summary judgment.") (citation omitted). Further, while the court views the record "in the light most favorable to the nonmovant and constru[es] all reasonable inferences from the evidence in his favor," *Moore v. Western Ill. Corr. Ctr.*, 89 F.4th 582, 590 (7th Cir. 2023),

a nonmovant is only entitled to favorable inferences that are supported by admissible evidence, not those based upon mere speculation or conjecture, *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017), or upon "[c]onclusory statements, not grounded in specific facts," *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016).

For all these reasons, FOIA cases are typically and appropriately decided on motions for summary judgment. *Media Rsch. Ctr. v. U.S. Dep't of Just.,* 818 F. Supp. 2d 131, 136 (D.D.C. 2011). However, a court may grant summary judgment based only on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State,* 565 F.3d 857, 862 (D.C. Cir. 2009). The court gives these affidavits or declarations a presumption of good faith that cannot be rebutted by purely speculative claims. *SafeCard Servs., Inc. v. SEC*, 962 F.2d 1197, 1200 (D.C. Cir. 1991). Under FOIA, the agency has the burden to sustain its action, which the district court reviews *de novo*. *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989).

The purpose of FOIA is to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). Under FOIA, "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Federal courts

6

have jurisdiction to order the production of any improperly withheld records. *Reporters Comm.*, 489 U.S. at 755.

Construed leniently, as required for a pro se pleading, the court understands him to assert that DHS, ICE, and DOJ violated FOIA by failing to conduct an adequate search of their records in good faith or that they have improperly withheld records he requested. The court will address each of these claims in turn.

## I. Adequacy of the Searches

An agency's search for records is adequate under FOIA if the agency can demonstrate that it "made a good faith effort to conduct a search for the requested records, using methods which can reasonably be expected to produce the information requested." *Oglesby v. U.S. Dep't of Army,* 920 F.2d 57, 68 (D.C. Cir. 1990). The question is not whether any documents possibly related to the request might exist, but whether the search for those documents was adequate. *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The adequacy of a given search is based on a standard of reasonableness and is a fact-specific inquiry. *Id.*

To meet its burden, the agency may submit affidavits or declarations explaining the scope of the search "in reasonable detail." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). At minimum, to satisfy a FOIA request, the agency must, "aver that it has searched all files likely to contain relevant documents." *Am. Immigration Council v. Dep't of Homeland Sec.*, 21 F. Supp. 3d 60, 71 (D.D.C. 2014). As such, the agency is not required to search every record system but must explain in its affidavits or declarations that no other record

system would be reasonably likely to produce responsive documents. *Oglesby*, 920 F.2d at 68. Without contrary evidence, the agency's affidavits or declarations are sufficient to show that the agency complied with FOIA. *Perry*, 684 F.2d at 127; *see also In re Wade*, 969 F.2d 241, 249 n.11 (7th Cir. 1992) ("In the face of government affidavits made in good faith, speculation would not defeat the summary judgment motion on this issue.").

### A. DHS's Non-Search Complied with FOIA

DHS contends that it complied with FOIA by referring plaintiff's request to ICE. In support, defendants have submitted a declaration from Catrina Pavlik-Keenan, Deputy Chief FOIA Officer for the Privacy Office of the DHS. (Pavlik-Keenan Decl. (dkt. # 33) ¶ 1).) In this declaration, Pavlik-Keenan explains that 6 C.F.R. § 5.3(a)(2) permits a requester to send a FOIA request to the DHS Privacy Office, which will then forward the request to the DHS component most likely to have responsive documents. (*Id.* ¶¶ 8-12.) DHS's policy is also to notify the requester that it is forwarding the request, inform the requester of where the request has been sent, provide the FOIA Public Liaison contact information, and provide administrative appeal rights. (*Id.* ¶ 12.)

Moreover, it is undisputed that DHS followed this procedure here. First, upon reviewing plaintiff's FOIA request, DHS determined that ICE was the subdivision of DHS most likely to maintain responsive records, because the FOIA request concerned records related to an investigation and operation conducted by ICE's Homeland Security Investigations ("HIS"). (*Id.* ¶ 15.) Specifically, DHS came to this conclusion because HSI investigates the illegal movement of people and goods into and out of the United States, including cybercrime, which would encompass plaintiff's federal prosecution. (*Id.*) Pavlik-

8

Keenan explains further that no other DHS component would be likely to possess responsive records given HSI's discrete duties and capacities. Second, the Privacy Office then transferred plaintiff's request to ICE, sent a letter to plaintiff explaining the transfer, provided contact information for ICE's FOIA office, and informed plaintiff of his right to contact DHS with follow-up questions. (*Id.* ¶¶ 15-16.) Pavlik-Keenan avers that DHS complied with the requirements of 6 C.F.R. § 5.3(a)(2) and, therefore, its non-search was adequate to satisfy its obligations under FOIA.

However, plaintiff argues that DHS erroneously sent its letter regarding his transferred FOIA request to F.C.I. Elkton, rather than F.M.C. Butner, where he was receiving medical treatment at the time the letter issued. (Dkt. # 41, at 1-2). This is immaterial for two reasons. To begin, it is undisputed that DHS received plaintiff's request and made a good faith determination to refer the request to the DHS component that was most likely to have responsive documents. Further, DHS also used the mailing address listed on plaintiff's FOIA request. If plaintiff had wanted communications sent to a different address, it was *his* obligation to send a written request to the agency. *See Pinson v. U.S. Dep't of Just.*, 177 F. Supp. 3d 56, 74 (D.D.C. 2016) (only because plaintiff made a written request to the agency to send materials to a different address was the "erroneous mailing [not] attributable to [plaintiff's] action or inaction"). In any event, plaintiff fails to show that DHS violated FOIA by failing to conduct an adequate search.

### B. ICE's Search Was Adequate Under FOIA Because it was Performed in Good Faith and was Reasonably Expected to Produce the Requested Information

Turning to ICE's search for responsive records following the referral from DHS,

9

defendants submitted a declaration from Fernando Pineiro, the Director for ICE's FOIA Office. (Pineiro Decl. (dkt. # 34) ¶ 1).) Pineiro describes ICE's standard search procedures in response to FOIA requests, explaining that after intake staff evaluates a request to ensure it complies with FOIA, the ICE FOIA Office identifies the program office within ICE likely to have responsive records and tasks that office with performing searches, providing them with a copy of the request and any pertinent, case-specific information. (*Id.* ¶¶ 20-23.) Searches are next run based on the individual's judgment on how records or routinely maintained. (*Id.* ¶¶ 24-26.) Any potentially responsive records are then provided to the ICE FOIA Office, which reviews the records for responsiveness and the application of any appropriate FOIA Exemptions. (*Id.* ¶¶ 26-27.)

Here, FOIA Director Pineiro declares under oath that the ICE FOIA Office determined HSI was the program office most likely to have responsive records, and out of an abundance of caution, tasked the Enforcement and Removal Office ("ERO") with searching for responsive records, as well. (*Id.* ¶ 29.) Because ERO's enforcement authorities do not extend to prosecution of cases like plaintiff's, however, ERO reasonably concluded that it likely would not possess any responsive records, and thus, deferred the search to HSI. (*Id.* ¶ 34.)

According to Director Pineiro, HSI received and reviewed the FOIA request, and the special agent who worked on the criminal investigation, as named by plaintiff in his FOIA request, conducted a search of her emails and the records management system using the search terms, also as specified in plaintiff's request. (*Id.* ¶ 37.) The agent informed the ICE FOIA Office that no records were found, in part because the investigation was ten

10

years old and because files were saved locally on a computer that had crashed. (*Id.* ¶ 38.) While plaintiff would dispute the fact that there are no longer any records available, believing HSI may still have records of the special agent's collateral interview (dkt. # 41, at 2), plaintiff cites no evidence in support of this belief and "speculation is insufficient to defeat a summary judgment motion." *Flowers v. Kia Motors Finance*, 105 F.4th 939, 946 (7th Cir. 2024).

In the end, plaintiff does not otherwise demonstrate that ICE's search was not made in good faith. To the contrary, as required under FOIA, ICE has presented a declaration that described the search in reasonable detail. Moreover, FOIA Director Pineiro's declaration adequately describes the standard procedures for searching for responsive documents to a FOIA request, as well as the steps actually taken by HIS to meet that standard. Specifically, the search described by Pineiro closely follows those standard procedures. Further, ICE represents it searched all files likely to contain responsive documents, and that no other record system would be reasonably likely to possess those documents. Finally, the special agent -- the person identified by plaintiff as the individual most likely to possess responsive documents -- used the precise search terms requested by plaintiff in her search. This is sufficient to demonstrate the reasonableness and adequacy of ICE's search. *Oglesby,* 920 F.2d at 68. Because the record demonstrates that the search was performed in good faith and was reasonably expected to produce the requested information, plaintiff fails to show that ICE did not conduct an adequate search in compliance with FOIA.

### C. DOJ's Search was Adequate for the Same Reasons as ICE's Search

For the same reasons discussed in connection with the search conducted by ICE, DOJ's search of its records was also adequate. Defendants provide a declaration from Christina Butler, Chief of the FOIA/Privacy Act ("FOIA/PA") Unit in the Office of Enforcement Operations within the Criminal Division of the DOJ. (Butler Decl. (dkt. #35) ¶ 1).) The FOIA/PA Unit maintains records responsive to FOIA/PA requests received by the DOJ Criminal Division and determines whether those records can be released in accordance with FOIA and the Privacy Act. (*Id*. ¶ 3.)

Butler declares under oath that plaintiff's FOIA request sought records as part of the CEOS investigation of plaintiff's child pornography criminal case and, in line with their standard search methods, the Criminal Division also determined that records maintained by CEOS would most likely be responsive. (*Id.* ¶ 18.) Therefore, it sent a search request to CEOS, along with a copy of plaintiff's FOIA request. (*Id.* ¶ 19.) CEOS then searched the email records of the attorney directly involved in plaintiff's criminal prosecution, as well as the CEOS hard drives and computer database using the search terms listed in plaintiff's request. (*Id.* ¶¶ 20-21.) From this search, responsive records *were* located, and the CEOS subject matter experts had no reason to search any other locations for potentially responsive records. (*Id.* ¶¶ 21-22.) Accordingly, Butler declares that the search was "reasonably calculated to uncover all potentially responsive records and that all files identified as likely to contain relevant records were searched," which is also sufficient to demonstrate that the search was adequate under FOIA. *Oglesby,* 920 F.2d at 68.

**II.     Applicability of Exemptions 6, 7(C), 7(F), and 7(E)**

In fairness, plaintiff does not dispute the adequacy of the search conducted by DOJ's Criminal Division, but instead that the responsive records located during that search were improperly withheld, a contention that is also unavailing for reasons discussed below. As noted above, DOJ's FOIA unit determined that 11 pages of records were responsive to plaintiff's request, but were not subject to disclosure under FOIA Exemptions 6, 7(C), 7(F), and 7(E), which are found at 5 U.S.C. §§ 552(b)(6, (b)(7)(C), and (b)(7)(F). Specifically, FOIA Chief Butler explains that the 11 pages of responsive records that were withheld consist of two documents containing communications between individuals, including plaintiff, collected by CEOS in the course of its law enforcement investigation of plaintiff for conspiracy to disseminate child pornography. (Butler Decl. (dkt. # 35) ¶ 23).)

While FOIA exemptions are construed "narrowly," *FBI v. Abramson*, 456 U.S. 615, 630 (1982), they are still intended to have "meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). For example, it is proper for an agency to withhold information under a FOIA exemption if it is reasonably foreseeable that disclosure would harm an interest protected by an exemption or if it would be prohibited by law. 5 U.S.C. § 552(a)(8)(A)(i). Moreover, while the agency has the burden of establishing that the material falls within an exemption, *Stevens v. U.S. Dep't of State*, 20 F.4th 337, 344 (7th Cir. 2021), an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible. *ACLU v. CIA*, 710 F.3d 422, 427 (D.C. Cir. 2013). Here, defendants' asserted FOIA Exemptions are both logical and plausible as explained below.

A. **Exemptions 6 and 7(C)**

Exemption 6 excludes from disclosure requested records that "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) excludes from disclosure records under the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id*. at § 552(b)(7)(C). According to Butler, DOJ's practice is to assert Exemptions 6 and 7(C) together due to the similarity of the analysis and the required balancing of interests. (Butler Decl. (dkt. # 35) ¶ 27.) While Exemption 6 protects information in "personnel and medical files and similar files," Exemption 7 only applies to information "compiled for law enforcement purposes." (*Id*. ¶¶ 25-26.) Here, it is undisputed that the records at issue were part of plaintiff's criminal investigation and were compiled for a law enforcement purpose.

Butler explains that the information withheld by DOJ pursuant to Exemptions 6 and 7(C) consists of names, identifying information, and contact information, including specific usernames of third parties, and file and image web addresses (*i.e.*, possible victims of child pornography) in relation to CEOS's underlying criminal investigation of the Dreamboard conspiracy to distribute child pornography. (*Id*. ¶ 28.) According to Butler, DOJ found that the privacy interests at issue regarding this information were substantial. (*Id*. ¶ 29.) Specifically, applying Exemptions 6 and 7(C) required DOJ to balance the privacy interests of the third-party individuals against any countervailing public interest in disclosure. (*Id*.)

In this case, DOJ reasoned that the release of the information could subject third parties, including potential victims of child pornography, to embarrassment,

stigmatization, innuendo, retaliation, and reprisals. (*Id.* ¶ 30.) Moreover, DOJ determined that all of the named individuals have a strong interest in not being identified or associated with alleged criminal activity, and the release of these records would not likely add to the public's understanding of how the DOJ works or how well it performs its statutory duties. (*Id.* ¶¶ 31-32.) Accordingly, DOJ concluded that there would be foreseeable harm in disclosure and a release of that information would not serve the public interest in any manner that outweighs the privacy interests of the individuals named in the documents. (*Id.* ¶ 33.)

In response, plaintiff argues that neither FOIA Exemptions 6 nor 7(C) apply to the 11 pages of responsive documents because the information is already public on Wikipedia, which features an entry for "Operation Delego." (Dkt. # 40, at 4.) Plaintiff is correct that individuals lack a privacy interest under Exemptions 6 and 7(C) when their names have already been publicly disclosed. *See O'Neill v. U.S. Dep't of Just.*, No. 05-cv-306, 2008 WL 819013, at *10 (E.D. Wis. Mar. 25, 2008) ("Under the public domain doctrine, if identical information is truly public, the enforcement of an exemption cannot fulfill its purpose.") (citation and quotation marks omitted). However, plaintiff bears the "initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Afshar v. Dep't of State,* 702 F.2d 1125, 1130 (D.C. Cir. 1983).

Here, plaintiff provides *no* evidence that the individuals sought to be protected by Exemptions 6 and 7(C) are the same names listed on the Operation Delego Wikipedia entry. Because he merely states that this information is already publicly available, plaintiff's argument fails to rebut DOJ's assertion that Exemptions 6 and 7(C) apply.

15

Given that the potential for harm is significant and the benefit to the public is minimal at best, DOJ has given a plausible justification for invoking Exemptions 6 and 7(C).

### B. Exemption 7(F)

Exemption 7(F) excludes from disclosure records that would endanger the lives or physical safety of individuals. 5 U.S.C. § 552(b)(7)(F). FOIA Chief Butler explains that DOJ asserted this exemption to protect the name and identifying information of plaintiff himself to prevent other inmates in the federal prison system from learning about plaintiff's underlying criminal offense and to protect plaintiff from the risk of potential violence. (Butler Decl. (dkt. # 35) ¶ 35.) Specifically, disclosure of this information would obviously identify plaintiff as the target of a child pornography investigation and that disclosure could have a real and meaningful adverse impact on his health and safety. (*Id.* ¶ 36.)

On the other hand, plaintiff argues that he has an "absolute right to this *Brady*-type material." (Dkt. #40, at 4). Still, at issue in a FOIA lawsuit is whether defendants improperly withheld responsive records or failed to conduct a search of their records in good faith, not whether they improperly withheld exculpatory evidence. *See Higgs v. U.S. Park Police*, 933 F. Supp. 897, 905 (7th Cir. 2019) ("a prisoner's interest in using FOIA as a discovery tool in a collateral attack on his own conviction is insufficient" to show a public interest that would overcome the government's assertion of a FOIA exemption); *Bothwell v. United States Dep't of Just.*, No. CIV-19-00500, 2025 WL 2080619, at *7 (W.D. Okla. July 23, 2025) ("A FOIA lawsuit is not the proper forum within which to relitigate a prior criminal conviction."). Therefore, plaintiff does not overcome the government's interest

16

in asserting Exemption 7(F), which was plausible when asserted.[2]

C. Exemption 7(E)

DOJ has come forward with an additional basis to exempt the records requested by plaintiff from disclosure. Chief Butler explains that DOJ inadvertently did not initially assert Exemption 7(E), but is asserting it now as part of its justification for nondisclosure. (Butler Decl. (dkt. # 35) ¶ 37 n.4.) Exemption 7(E) exempts from disclosure records pertaining to law enforcement techniques and procedures. 5 U.S.C. § 552(b)(7)(E). Butler explains that releasing the documents requested by plaintiff would expose the utility of this type of information to the Criminal Division and would essentially instruct criminals on how best to avoid providing the Criminal Division with crucial evidence for its investigations. (Butler Decl. (dkt. # 35) ¶ 38.) According to Butler, DOJ has determined that such disclosure would allow criminals to tamper with evidence defensively, which may become useful to the Criminal Division in the future, and allow criminals to predict the investigative use of this kind of information in similar investigations, allowing them to preemptively modify their behavior to avoid detection and circumvent the law. (*Id.*) The court is skeptical that criminals are actually reviewing documents from these types of investigations and gleaning insight on how to avoid detection, because DOJ has shown that all 11 pages of responsive documents are subject to an exemption, there is necessarily no

---

[2] Plaintiff's bare assertion that he has a right to the information does not constitute a waiver of the right to have his own personal safety protected under Exemption 7(F). *See Mosby v. Hunt*, No. 09-1917, 2010 WL 2794250 at *1 (D.D.C. July 15, 2010) ("[T]he Court can imagine no situation in which an individual would [knowingly] waive his or her right to physical safety-which is the right protected by Exemption 7(F).") (citation omitted). Even if it were, DOJ properly withheld the same information under Exemptions 6 and 7(C).

information that can be segregated and disclosed, despite plaintiff's bare assertion to the contrary. (*Id.* ¶ 40; Dkt. # 40, at 4).

Overall, plaintiff has failed to show that DOJ improperly withheld the documents based on logical, plausible and applicable FOIA exemptions or that the defendants otherwise violated his rights by failing to respond to his requests. Accordingly, defendants are entitled to summary judgment.

## ORDER

IT IS ORDERED that:

1) Defendants' motion for summary judgment (dkt. #31) is GRANTED.

2) The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 10th day of March, 2026.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge